## S. H. PICKENS v. M. L. KIZER et al.

Eastern Section. March 15, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

552

Brown & Johnson, of Maryville, for appellant.
Crawford, Gamble & Goddard, of Maryville, for appellee.

PORTRUM, J.   This bill was filed by a tenant in common to force a sale of the reversion of certain marble rights lying upon and under the surface of the soil which was owned in fee by the complainant.

In 1892, John W. Kizer and wife conveyed the tract of land described in the bill to A. R. Kizer but reserved to himself one-half interest of the marble on the same.   On October 1, 1904, John W. Kizer, J. L. Kizer and J. W. Kizer, Senior, the first named two being heirs at law of A. R. Kizer, deceased, and the three conveyors owning the whole of the marble interests, leased to the Knox Marble & Railway Company, a domestic corporation, the marble on said land for a term of forty years.   On April 5, 1920, John W. Kizer, Senior, and wife, Daisy Kizer, conveyed in fee simple to S. H. Pickens, all their right, title and interest in and to the said tract of land, which contained 243 acres.

It is averred that the lease to the Knox Marble & Railway Company has never been worked, notwithstanding the fact that the lease stated the purpose of same was for developing the marble. The complainant prays that the interest of the parties in the premises be declared and especially what interest the defendants would have in said marble interests at the expiration of the lease now on the same relative to their rights to quarry, erect derricks, and all other rights essential to said marble and after a declaration of these rights that the marble reversion be sold for partition, on terms fixed by the court.

The purpose of this bill was: first, to have the forty-year lease declared forfeited because of the owner's failure to operate and develop the marble; and, second, if unsuccessful in this, that the interests of the tenants in reversion be declared, so as to determine their right to the surface use of the soil in quarrying and removing the marble if it ever became necessary for them to remove the same. It was insisted that since the deed made no reservations for rights of way and easements for the placing of derricks in quarrying the marble, then the owners of the marble rights, excepting the owner of the soil, had only a naked right to the marble and could not use the surface in removing the same. And, third, after a declaration of the rights of the tenants in reversion, it was prayed that the reversionary interests be sold for partition.

The company owning the lease, which gave them the right to remove any or all of the marble during the lease period and also required the company to pay minimum monthly royalty in the sum of $360 annually, resisted the forfeiture upon the ground that it was not required to quarry and remove the marble so long as it paid the minimum royalty. The defendants in reversion resisted the partition upon the theory that the interest sought to be sold was a contingent interest and, therefore, not partitionable, and also resisted the right of the complainant to a declaratory judgment upon the interest in the surface which could be exercised and enjoyed only after the expiration of the lease.

The Chancellor was of the opinion that there was no forfeiture and the complainant was not entitled to a decree of forfeiture against the marble company; he was further of the opinion that the complainant was not entitled to a declaratory judgment defining the interest of the tenants in the marble, enjoyable at the expiration of the lease, because, he held, this claim was premature, and he was further of the opinion that the tenants in reversion were not entitled to a sale of their interests at the present time, basing his holding upon a statement of counsel in open court that if the court declined to declare the rights of the parties to the use of the surface after the expiration of the lease, then the complainant did not want

a partition. The bill was dismissed, and from the decree the complainant prays an appeal to this court.

Taking up first the construction of the lease contract, we are of the opinion that the complainant is not entitled to a forfeiture of this leasehold estate for the following reasons:

The contract provides for notice in case of default in the payment of royalties. If it was the lessee's duty to work the quarry, then it was in default in not making monthly payments and, under the terms of the contract, in case of default the lessor by giving thirty days' notice may perfect his claim for a forfeiture. This notice was not given and since forfeitures can be, and often are, waived and this contract had been running for many years, and the complainant had been receiving his portion of the monthly payments, then, under such circumstances, the company had a right to believe, until notice, that the complainant was content and to have waived any right to a forfeiture. However, the bill prays for a declaration upon the rights of the complainant to insist upon the operation of the quarry, and this makes the question of the right to declare the forfeiture open for discussion and determination. The prayer of the bill in reference to the lessee reads:

"That the Diamond Marble Company be required to quarry said marble and place the same on the market in a reasonable, rapid manner, otherwise that the lease contract on said marble be declared null and void by a decree of this honorable court."

The court cannot compel operation. If it did, how much marble would the complainant be satisfied with? Such a course would put the court in business. This is not customary or permissible when the litigant is solvent.

The provision in reference to the payment of royalty, which is a pertinent provision, reads:

"The second party, its successors and assigns, are given the right of sufficient space for all dumpage and waste material. It is further contracted and agreed as rentals for the leased premises, a royalty of sixty cents per cubic yard shall be paid the first party, its successors and assigns, for all marble quarried and suitable for shipment, whether it be sold or kept on the premises for stock, and whether there shall be quarried any marble at all or not, and shall be paid to first parties, their heirs and assigns, a minimum annual rental of said premises of $360, it being understood, however, that should royalty on shipments and quarried stock on hand suitable for shipment exceed this minimum rental, then the minimum shall be covered by the royalty and will not be paid in addition thereto; if any when the minimum paid exceed the royalty on shipments and stock on hand suitable for shipment, such excess shall be deducted

from excess of royalty over minimum thus paid, and when that condition shall thereafter arise and exist.

"Rentals, royalties, one or both as the case may be, shall be paid monthly, as a minimum annual rental of $360. The monthly payments shall be made on the first day of each month beginning October 1, 1904. As to the royalty of sixty cents per cubic yard, it shall be paid on the 10th day of each month for the preceding month and if any instalments or royalties be not paid on demand, within thirty days after its maturity, then, at the option of the first parties, this lease may be declared forfeited and cancelled upon the giving by first parties to second party, its successor or assign, thirty days' written notice of intention to so forfeit and cancel same."

There is a prior provision in the contract which, it is insisted, has some weight in its construction. It reads:

"It is further understood and contracted that this contract of lease is made for the express purpose of quarrying and developing the marble deposit on said property and placing same on the market."

We are of the opinion that this last quoted provision was made to define the interest and not to require immediate and continuous operation. This question is governed by the other provisions of the contract quoted.

We think this contract bears the construction which denies a forfeiture for a failure to operate so long as the minimum charge is paid when due. This covenant takes the place of any implied covenant. It is supported by a sufficient consideration. The case of Morris v. Messer, 156 Tenn., 54, 299 S. W., 782, is authority for this conclusion. That was an oil developing contract—peculiar to the oil industry—but the reasoning applies to this case. In fact, the failure to explore for oil may result in the loss of the oil by drainage from adjoining lands, while here the marble can never be disturbed. A declaratory decree will be entered accordingly. See Declaratory Judgment Act, Acts 1923, Ch. 29, pp. 101.

The complainants asked for a further declaration of the rights (at the end of the lease) of the tenants in reversion. The deeds severing the estate by reserving one-half of the marble interests below and above ground is silent on the method of operation as well as the right to ingress or egress and surface rights in general.

It is the contention of the complainant that since he owns the surface, he is not handicapped in the enjoyment of his interest in the marble but his co-owners are because they have no legal right to use the overlaying surface in the removing of the marble.

This contention is not well founded. There was by inplication an implied reservation of sufficient right of way and ground surface for quarrying and removing of the marble in a reasonable way.

(Northcut v. Church, 135 Tenn., 558.) This right cannot be defeated on the theory that the complainant is a subsequent purchaser of the surface right and was not required to take notice of implied and invisible easements resting upon the surface. He purchased the surface and one-half interest in the marble, with full knowledge of the interests of his co-tenants in the marble. His deed was not silent upon the severed estate and it raised the implied reservations.

The court cannot define, at this time, by description, the easements reserved. This is a question of fact, determinable at a future date or at the time of enjoyment, as an incident to the ordinary and reasonable use. The rights of the co-tenants in reversion may be declared accordingly.

After the declaration of the rights and interests of the parties, the complainant prayed for a sale of the reversion for partition. This was resisted upon the ground that the marble company may remove all the marble before the expiration of its lease and a fair market cannot be obtained for so contingent an interest. It is said:

"There can be no partition or sale for partition among contingent remainders. Rutherford v. Rutherford, 116 Tenn., 585, 92 S. W., 821." And we may add, Jordan v. Jordan, 145 Tenn., 452, 239 S. W., 423, and Muldoon v. Trewhitt (Chy. App.), 38 S. W., 109.

These cases deal with contingencies based upon conditions precedent which can never vest until the happening of the contingency. The present reversion is contingent upon a condition subsequent and the estate exists until the happening of the contingency.

However, after much deliberation upon this question, the court concluded the question did not arise in this case. A co-tenant as a matter of law has no right to divide the joint estate into estates for years and in reversion and then insist upon a sale of the reversion only for partition, over the objection of the other tenants. It can make no difference in his rights if the estate was so divided at the time he purchased into it. It may be a court of equity could authorize a division of the fee and a sale of a part for partition when warranted by the circumstances, but it will not, when to do so, creates a contingency which destroys the market value of the portions sold, especially when a sale of the whole interest of the co-tenants in the marble would eliminate a contingency.

Our partition statutes authorize a partition of vested estates held in co-tenancy (Bierce v. James, 87 Tenn., 538, 11 S. W., 788). It is against the policy of the law to require one to continue against his will as a co-tenant with another in a partitionable estate. We think the Chancellor erred in declining to allow a partition or a sale for partition of this joint estate. However, he should not have permitted a sale of a part of the joint estate but have required a partition of the whole.

The complainant stated in open court he did not seek a sale for partition in the event the surface rights were not declared. He is entitled to the declaration, and to the partition of the whole interest in the marble which carries the surface easements.

The decree of the Chancellor will be modified accordingly but in all other respects affirmed, and the case will be remanded to the lower court for the required reference and decree for partition or sale.

The costs of the case are taxed three-fourths against the appellant and one-fourth against the appellees Kizers and the costs to accrue on the remand will be taxed by the Chancellor. Modified and affirmed.

Snodgrass and Thompson, JJ., concur.

## OPINION ON PETITION TO REHEAR.

The petitioner has filed a petition to rehear.

The court decreed a right in the complainant to a sale of the marble rights for partition. Upon inspection of the bill and of the declaration made in open court as well as the assignments of error, it is seen that the complainant wants to retain and enjoy the leasehold rental or his portion of the rent during the term of the lease and, therefore, he wants to sell for partition the reversion or remainder estate only. This was made clear by his testimony.

In its opinion the court held he had a right to partition the estate as a whole but not the reversionary interests only or remainder, and remanded the case to the lower court for the purpose of a sale.

Upon a reconsideration of the case, the court is of the opinion it is not proper to go beyond the prayer of the bill, the complainant's testimony, and his assignments of error, and grant him relief in a matter he has said he did not want. At least, he has never directly said he wanted a partition of the whole interest. He has not answered this petition to rehear and this court does not know that he desires a partition if it entails the loss of his rentals from the leasehold estate.

This court is of the opinion it should have confined its decree to the assignments of error and to have denied the relief asked therein. This does not have the effect of denying him the right to have or bring an ordinary partition proceeding should he desire a partition of the whole estate.

The appellant will pay seven-eighths of the costs of the appeal, and the appellee the balance. Sustained.