Evelyn JONES

v.

Angela ANDERSON, In Her Official Capacity as Clerk & Master of Morgan County.

Court of Appeals of Tennessee, at Knoxville.

Aug. 13, 2007 Session.

Sept. 26, 2007.

Permission to Appeal Denied by Supreme Court Feb. 25, 2008.

---

Billy P. Sams, Oak Ridge, Tennessee, for appellant, Evelyn Jones.

Joe R. Judkins, Wartburg, Tennessee, for appellee, Angela Anderson.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

Evelyn Jones sued Angela Anderson, in the latter's capacity as Clerk & Master of Morgan County ("the Clerk & Master"). The plaintiff sought a writ of mandamus or, alternatively, "a declaration as to the rights ... [the plaintiff] acquired by her act of redemption" with respect to a piece of property titled to the plaintiff's uncle, Julian Jones. Mr. Jones was deceased when the subject property was sold at a tax sale. Based upon the pleadings and stipulated facts, the trial court dismissed the complaint. The plaintiff appeals, arguing that she is entitled to a writ of mandamus ordering the Clerk & Master to make a deed conveying to her the fee simple interest in the subject property. We affirm.

### I.

The subject property is located in Morgan County. Pursuant to the applicable statutory scheme and the order of the trial

court, the Clerk & Master sold the property for delinquent taxes at a public sale. Subsequent to the sale, the plaintiff, a niece of Julian Jones, redeemed the property by paying the Clerk & Master the sum of $592.27. This amount represents the total of all delinquent taxes on the property, penalties, interest, statutory attorney's fees, and costs as calculated by the Clerk & Master. The trial court, in an order pertaining to the plaintiff's redemption, which order was entered in the delinquent tax sale litigation, held that the heirs of Julian Jones owned the property at the time of the tax sale and that, as a result of the plaintiff's redemption of the property, title to the property was divested out of the "tax sale" purchaser and "restored and vested in the *JULIAN JONES HEIRS*." (Capitalization in original; emphasis added).

According to the parties' stipulation, (1) no will of Julian Jones has been admitted to probate; (2) he apparently had no children; (3) the plaintiff is a niece of Mr. Jones; and (4) Mr. Jones had other heirs, some of which are known to the plaintiff while "some are unknown" to her. The plaintiff admits she did not give notice to any of the other heirs of Mr. Jones advising them that she intended to redeem the property. It is stipulated that she did not offer any of her "co-tenants" the opportunity to participate in redeeming the property.

The plaintiff waited until the one-year statutory redemption period had elapsed before submitting to the Clerk & Master her request for a tax deed. According to the parties' stipulation, the Clerk & Master advised the plaintiff "that no tax deed should issue upon the aforementioned request and that the act of purported redemption by the Petitioner is for the benefit of all heirs." The parties' stipulation further recites that the Clerk & Master

"has not historically made deeds for property redeemed after a tax sale."

When the Clerk & Master refused to give her a tax deed for the fee simple interest in the property, the plaintiff filed a complaint for a writ of mandamus or, in the alternative, for a declaratory judgment. Specifically, the plaintiff asked the trial court to direct the Clerk & Master to prepare and execute a tax deed to the plaintiff transferring the entirety of the interest held by Julian Jones in the subject property. In dismissing the plaintiff's complaint, the trial court held that (1) the Clerk & Master was not required to execute and deliver to the plaintiff the requested deed; (2) the requested relief of a deed was a discretionary act by the Clerk & Master; (3) the Clerk & Master did not have the authority to make a deed as requested by the plaintiff; and (4) the Clerk & Master had done everything required of her as a result of the plaintiff's redemption of the property. The court also reiterated what it had said in the order in the earlier tax sale litigation. In its "Order Redeeming Land from Tax Sale," the trial court had specifically determined that the " 'taxpayer' or 'taxpayers' prior to the sale by Morgan County of the property in question was not Julian Jones, but the heirs of Julian Jones, or other persons who acquired ownership of the property in question as a result of the death of Julian Jones."

## II.

The sole issue raised by the plaintiff, as taken verbatim from her brief, is whether "the [trial court] err[ed] in refusing to grant the [w]rit of [m]andamus sought by [the plaintiff]." Since all of the material facts in this case are stipulated and, hence, undisputed, the plaintiff's issue raises a pure question of law. Therefore, our *de novo* review of the record proceeds unim-

peded by any presumption of correctness as to the trial court's conclusions of law. *See S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001); *see also Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn.2001). The issue before us is a narrow one: Do the undisputed material facts in this case make out a case for the issuance of a writ of mandamus?

### III.

■■■ The general rule regarding the issuance of a writ of mandamus is that the writ is not issued to control or coerce discretionary power by an officer, but will lie to enforce the performance of an official duty and to compel the exercise of power. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221 (Tenn.1988); *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 389 S.W.2d 266, 269 (1965); *State ex rel. Veal v. Mayor & Aldermen of Dyersburg*, 184 Tenn. 1, 195 S.W.2d 11, 13 (1946); *Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn.Ct.App.1990). In determining whether an act is a ministerial act for which mandamus may lie, courts look to whether the law defines the duties to be performed "with such precision and certainty as to leave nothing to the exercise of discretion or judgment", ... *Lamb v. State*, 207 Tenn. 159, 338 S.W.2d 584, 586 (1960) (quoting 55 C.J.S. *Mandamus*, § 67, (1998)). For an act to be enforced by a writ of mandamus, the act must be purely "ministerial." *Peerless Constr. Co. v. Bass*, 158 Tenn. 518, 14 S.W.2d 732, 732 (1929). Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established.... *Id.* at 733.

### IV.

■■■ The powers and duties of individuals occupying the position of clerk and master are addressed by several statutes. *See* T.C.A. §§ 21–1–701 (1994), 18–1–105 (Supp.2006), 18–5–102 (1994), 18–5–103 (1994). A clerk and master "is a mere ministerial officer and cannot act except under the conditions prescribed by the statute." *Bailey v. Schubert*, 203 Tenn. 660, 315 S.W.2d 249, 252 (1958).

In the instant case, the plaintiff relies upon the provisions of T.C.A. § 67–5–2706 (2006):

> Upon redemption of property under this part, the person who redeems property shall be transferred the interest in the property that was held by the taxpayer prior to the sale for delinquent taxes. However, any creditor who redeems may proceed to foreclose or otherwise enforce such creditor's lien.

The plaintiff argues in her brief "that a[w]rit of [m]andamus should be ordered to give her the benefit of the redemption statutes whose provisions [the Clerk & Master] followed, i.e.[,] a transferal of interest by tax deed."

The statute upon which the plaintiff relies does not *expressly* state that a clerk and master is empowered or directed to make a deed to a person who has exercised that individual's statutory right to redeem property.[1] Furthermore, none of the four statutes cited earlier in this opinion provide that such a clerk is authorized to make a deed to one who has properly exercised his or her right of redemption. In the absence of an express grant of authority, we are loath to hold that the writ should have issued in this case.

■■■ There is another problem with the plaintiff's position in this case. It is worth noting again that the plaintiff claims that her redemption of the property entitles her to the *fee simple* title. This is simply

---

**1.** The right of redemption is addressed at     T.C.A. § 67–5–2701 *et seq.* (2006).

not the law, as recognized by the trial court when it stated that prior to the tax sale, the property was owned by "the heirs of Julian Jones, or other persons who acquired ownership of the property in question as a result of the death of Julian Jones." This decree was essentially consistent with the trial court's order in the delinquent tax sale litigation vesting the property "in the JULIAN JONES HEIRS." (Capitalization in original).

In holding that the Clerk & Master was not authorized to give the plaintiff a deed conveying a *fee simple* title, we rely, in part, upon a doctrine that appears to have been first pronounced by the Supreme Court in the case of *Tisdale v. Tisdale*, 34 Tenn. 596, 599 (1855). That doctrine was described in a later case as providing that tenants in common "cannot buy in the common property at a tax sale, or foreclosure sale, or buy in an outstanding title or other overhead claim, except for the benefit of all." *State v. Allen*, 27 Tenn.App. 357, 181 S.W.2d 375, 376 (1944) (quoting *Perkins v. Johnson*, 178 Tenn. 498, 160 S.W.2d 400, 401 (1942)). It logically follows from the *Tisdale* doctrine that a joint tenant who redeems property is doing so "for the benefit of all." *Allen*, 181 S.W.2d at 376. The plaintiff's act of redemption was correctly regarded by the trial court and the Clerk & Master as an act for all. The doctrine of *Tisdale v. Tisdale* has long been cited with approval in this state:

> Tenants in common by descent, are placed in a confidential relation to each other, by operation of law, as to the joint property, and the same duties are imposed as if a joint trust were created by contract between them, or the act of a third party.... Being then interested with, and for each other, in the property, each one is prohibited from acquiring rights in it, antagonistic to the others. Being associated in interest as tenants in common by descent, an implied obligation exists to sustain the common interest. This reciprocal obligation will be vindicated and enforced in a court of equity, as a trust. These relations of trust and confidence bind all to put forth their best exertions, and to embrace every opportunity to protect and secure the common interest, and forbid the assumption of a hostile attitude by either; and therefore, the purchase by one of an outstanding title, or an incumbrance upon the joint estate, in his own name, will enure to the equal benefit of all, but they will be compelled to contribute their respective ratios of the consideration actually given.

*Allen*, 181 S.W.2d at 377 (quoting *Tisdale*, 34 Tenn. at 599) (citations omitted). From a legal standpoint, the acts of the plaintiff in this case were clearly for the benefit of all of the owners of the property.

As an additional basis for our opinion, we note that a conveyance by the Clerk & Master of the *fee simple* title would have been in direct contravention of the order of the trial court stating that the act of redemption resulted in the subject property being vested in *all* of the heirs of Julian Jones. The Clerk & Master had no power to give the plaintiff a deed that would contradict the trial court's order. T.C.A. § 21–1–707 (1994) provides that "[t]he clerk and master shall not set aside, modify, or alter any rule or order of the chancellor, where such power is given by this Code; ..."

### V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Evelyn Jones. This case is remanded to the trial court for the collection of costs assessed below, pursuant to applicable law.